KALLIOPE CHAFOULIAS, Appellant, v 240 E. 55TH STREET TENANTS CORP., Respondent.

First Department, November 3, 1988

**APPEARANCES OF COUNSEL**

*Harry T. Walters* of counsel *(Townley & Updike,* attorneys), for appellant.

*Kenneth J. Ready* of counsel *(Renny Wm. Way,* attorney), for respondent.

## OPINION OF THE COURT

SMITH, J.

This is an appeal from an order of the Supreme Court granting summary judgment dismissal in a personal injury case. Because the record before the IAS court reveals the existence of material triable issues of fact, we reverse the order and reinstate the complaint.

The facts giving rise to this action occurred on March 17, 1984 at approximately 10:30 A.M. Plaintiff, Kalliope Chafoulias, 53 years of age, upon entering an apartment building owned by the defendant located at 240 East 55th Street in Manhattan, fell down two stairs in the vestibule, breaking her kneecap. Plaintiff was at the location to meet a real estate agent with whom she had an appointment to view one of the apartments. As depicted in photographs which were part of the record before the IAS court, the vestibule of the building is entered from 55th Street through two glass doors. Approximately six inches to the left upon entering the vestibule are two steps and after descending these steps, to the right are another pair of glass doors which lead into the interior lobby. The two vestibule steps serve to bridge the 12-inch difference between the street level portion of the vestibule and that portion which is level with the interior lobby. These steps are not visible from the street, as they are perpendicular to the entrance door and the view of them from the street is obscured by venetian blinds. The floor tile of the upper vestibule platform, the stairs and the first few inches of the lower platform are the same color. It does not appear that the steps have any markings in contrasting colors either on the horizontal sections or on the edges, nor are there any accompanying handrails or bannister. In addition, upon entering the vestibule from the front door, one faces a glass wall which partitions the vestibule and stairs from the lower interior lobby. A metal bar which extends horizontally straight across the middle of that portion of the glass wall may create an illusion that the walking surface is also horizontal. There was no doorman present at the time of plaintiff's fall, nor were there any notices warning entrants of the steps.

Plaintiff, in September 1985, commenced this personal injury action sounding in negligence and seeking $100,000 in

damages. She alleges in her complaint and bill of particulars that the defendant carelessly and negligently maintained the vestibule steps in dangerous proximity to the front door, that the defendant knew or should have known of the defective condition, that defendant failed to warn her of this dangerous and defective condition, and that the injuries which she suffered as a result of her unexpected fall were solely due to the negligence of the defendant.

Defendant's answer denies liability and interposes as an affirmative defense that plaintiff's injuries were due to her own negligence.

At her deposition in January 1986, plaintiff testified that on the date in question she entered the building, turned left as is necessary to reach the inner set of double doors, took one step and fell down the steps. She further testified that the weather was clear and that the building's doorman was not at the door at the time, but came to her assistance promptly after the fall, saying, "A number of people have fallen here." In a portion of her deposition, apparently relied upon by the IAS court in dismissing the complaint, she also stated, "I never saw the stairs. I just opened the door and walked in, and the next thing I knew, I had fallen down these stairs."

Thereafter, in May of 1986 plaintiff's attorney served on defendant a notice for discovery and inspection which included a request for any preaccident complaint, warnings or notices of dangerous or defective conditions at the location of the accident, investigations or inspections of the location and documents reflecting other accidents at the location.

The building's superintendent, who had been employed at the location for three years prior to the accident, was deposed by plaintiff and denied any knowledge of prior accidents or complaints relating to the vestibule steps. He also testified that doormen while on duty were required to be at the front door at all times.

While plaintiff was still attempting to obtain documents from the defendant as to prior accidents at the location, defendant moved for summary judgment dismissal.

In support of the motion the defendant submitted the affidavit of an "expert" consulting engineer which asserts that, based upon his inspection, the building met New York City Building Code requirements and that there was "no defect from an engineering standpoint at the entrance to the lobby." The defendant's attorney, in an affidavit in support of

the motion, points to plaintiff's testimony that "she never saw the step" as supporting a conclusion that the plaintiff fell because of her inattentiveness and not because of the defendant's failure to exercise reasonable care in its maintenance of the premises.

Plaintiff opposed the motion by an attorney's affidavit, annexed to which were photographs of the accident scene depicting the vestibule floor, stairs and glass doors, and portions of the depositions of the building's superintendent and of plaintiff. Plaintiff's attorney argued that facts adduced in discovery, considered by themselves, raised issues of fact as to the exercise of reasonable care by the defendant in failing to highlight the presence of the vestibule steps. Moreover, plaintiff asserted that she required additional discovery of documents related to prior accidents and wished to depose defendant's managing agent and the doorman as to prior accidents and complaints. In an attorney's affidavit in reply, defendant argued that discovery was completed and offered the affidavit of an employee of its managing agent, retained a year prior to the accident, that there had been no accidents or complaints about the vestibule steps reported to the agent.

By decision entered April 27, 1987, the IAS court granted summary judgment dismissal. The court found that the photographs indicated that the accident scene "is unremarkable and common to many apartment entrances" and failed to show any maintenance defects. Further, it found that plaintiff had failed to provide evidence of construction or structural defects. The court stated: "The testimony of the plaintiff at the deposition failed to state any defect in the steps or give any reason attributable to defendant's negligence causing her fall. Her testimony indicates she fell because she was not looking where she was going * * * Speculative theories are insufficient particularly where the plaintiff herself does not attribute the accident to the negligence theories claimed."

The issue presented on this appeal is whether there was before the IAS court evidence which revealed the existence of genuine and substantial triable issues of fact sufficient to defeat the defendant's motion for summary judgment. (Alvarez v Prospect Hosp., 68 NY2d 320, 324; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404.)

In the instant case, plaintiff claims that the defendant negligently maintained the vestibule steps of its apartment building in close proximity to the entrance door and that the

defendant failed to warn plaintiff of its imperceptibility. Plaintiff's negligence theory of optical confusion, due to defendant's failure to mark or otherwise distinguish the steps in any meaningful fashion, exacerbated by the proximity of the entrance doors to the steps, is both legally sufficient and adequately supported by the record to preclude summary judgment. *(Quinlan v Cecchini,* 41 NY2d 686; *Brooks v Bergdorf-Goodman Co.,* 5 AD2d 162 [1st Dept 1958].)

Since the theory of plaintiff's complaint is not one of defective construction, the IAS court gave undue significance to plaintiff's failure to introduce evidence, expert or otherwise, in support of same. Similarly, since plaintiff makes no claim of structural defect or building code violations, the affidavit of defendant's consulting engineer is not conclusive. *(See, Christoforou v Lown,* 120 AD2d 387, 390 [1st Dept 1986], citing *Wilmot v City of New York,* 73 AD2d 201, 204 [1st Dept 1980].) Issues involving the safety of the vestibule area and whether under the circumstances one could reasonably perceive the existence of the steps are hardly so complex as to require that plaintiff present expert testimony in order to establish her case. *(See, Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, 148; *Corelli v City of New York,* 88 AD2d 810 [1st Dept 1982].) Whether the color and arrangement of the vestibule area created a dangerous condition or defect is a matter within the common knowledge and experience of jurors. *(See,* Richardson, Evidence § 367, at 340 [10th ed]; Fisch, New York Evidence § 413, at 264 [2d ed].)

A reasonable interpretation of plaintiff's deposition testimony that she "never saw the stairs" and one which is consistent with her negligence theory is that the steps were so indistinguishable from the platforms above and below them and so close to the entrance door that they could not be seen. Defendant's contention, therefore, that Chafoulias failed to look and see that which was there to be seen, simply begs the question. Nevertheless, the interpretation of plaintiff's deposition testimony and her failure to maintain a reasonable lookout, if any, are questions for the jury.

Plaintiff by means of her verified complaint, bill of particulars, deposition testimony, photographs, attorney's affidavit and supporting documents, has presented evidentiary proof sufficient to establish the existence of material issues of fact. *(Alvarez v Prospect Hosp., supra,* at 324.) Whether the condition of the vestibule area created optical confusion, as well as the issues of foreseeability, proximate cause, and comparative

negligence, all pose factual questions not to be decided as a matter of law. *(Rotz v City of New York,* — AD2d — [1st Dept 1988].)

Accordingly, the order of the Supreme Court, New York County (William P. McCooe, J.), dated April 24, 1987, should be reversed, on the law, and the complaint reinstated, without costs.

KUPFERMAN, J. P., CARRO, ASCH and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 24, 1987, unanimously reversed, on the law, and the complaint reinstated, without costs and without disbursements.